# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:15cr143 |
| | ) | |
| RICHARD ALLEN WITCHER | ) | |
| | ) | |
| Defendant. | ) | |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The United States of America, by Dana J. Boente, United States Attorney, Elizabeth M. Yusi, Assistant United States Attorney, and Leslie Williams Fisher, United States Department of Justice trial attorney, offers this position paper regarding the sentencing factors stated in 18 U.S.C. § 3553(a). The government has no objection to the content of the Presentence Investigation Report (PSR). According to the PSR, the correct advisory calculation under the United States Sentencing Guidelines (U.S.S.G. or "Guidelines") is 135 to 168 months' imprisonment. Based on the nature of the offense, the defendant's characteristics and history involving child pornography, the United States asks the Court to impose a significant sentence of imprisonment and supervised release. In support of its position, the government states as follows:

### I. BACKGROUND

On January 19, 2016, defendant RICHARD ALLEN WITCHER ("the defendant") pleaded guilty to one count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). The Court is scheduled to sentence the defendant on April 19, 2016.

The investigation identifying the defendant began when Homeland Security Investigations (HSI) received a lead regarding an investigation into the username JOJHON2015 found on a website known to be used to trade child pornography. The website is a free photo sharing website, hosted outside of the United States, where users can create accounts and post images for other users to see. The website administrators provided HSI with the logs for the JOJHON2015 profile and 15 images uploaded by JOJHON2015 to the profile. The information provided to HSI indicated that on November 3, 2014, the user of the JOJHON2015 profile uploaded an album of images titled "Vids for trade EZ." The album included images that depict minors engaging in sexually explicit conduct.

The information provided to HSI included the most recent access logs for the user profile, which indicated that the user JOJHON2015 had logged onto the website multiple times between October 30, 2014 to November 3, 2014, via the IP address 70.160.69.25. After determining that the IP address belonged to Cox communications, HSI served Cox Communications with an administrative subpoena. Cox responded on January 23, 2015. The response indicated that the IP address 70.160.69.25 was assigned the residence of the defendant, RICHARD ALLEN WITCHER.

On October 6, 2015, HSI obtained a federal search warrant authorizing the search of the defendant's residence. On October 8, 2015, Special Agents with HSI Norfolk, with the assistance of law enforcement from other agencies and departments, executed the search warrant at WITCHER's residence. When law enforcement knocked on the door, the defendant answered the door of the residence and indicated that he resided there. The defendant was advised of his *Miranda* rights via a statement of rights form, and orally agreed to be interviewed by the HSI agents. Law enforcement explained to the defendant the nature and circumstances surrounding

the reason they were executing a search warrant, and the defendant admitted that he was responsible for the activity. The defendant admitted to creating the profile JOJHON2015 and uploading images of child pornography to the website. The defendant admitted to possessing child pornography on multiple electronic devices, including an Apple iPhone, an Apple iPad, and laptop computers. He explained that he used many different Internet-based resources to access, view, and collect child pornography. He further explained that he used message boards, chat rooms, e-mail, and a social-networking "app" called KIK to receive child pornography from other users. The defendant admitted that he had been viewing child pornography for about three years.

Law enforcement reviewed the defendant's Apple iPhone and Apple iPad during the execution of the search warrant and observed numerous images and videos of child pornography. These items were seized, among other electronics, and law enforcement performed further forensic examinations of them. These forensic examinations revealed numerous files of child pornography. To wit, WITCHER was found to have over 19,000 individual images and over 1,400 videos of child pornography located on numerous devices.

The National Center for Missing and Exploited Children (NCMEC) maintains a database of child pornography images and corresponding child victims who have been previously identified by law enforcement. Each set of images with known victims is designated as a series. The images found on the defendant's computer and computer equipment were sent to NCMEC. Thereafter, NCMEC provided a report indicating that the defendant's computer media contained approximately 270 images and 75 video files from 41 different known series of child pornography. Some of those known victims have provided impact statements, which were provided to the Court through the Probation office.

## II. STANDARDS GOVERNING SENTENCING

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing Guidelines purely advisory, but emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. *Id.* at 264. The Supreme Court reaffirmed this principle in *United States v. Kimbrough*, 552 U.S. 85 (2007), emphasizing that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Id.* at 90. Finally, in *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court instructed that the sentencing court should calculate the Sentencing Guideline range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the § 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors. *Id.* at 49-50. The *Gall* Court further instructed that, in the event that the sentencing court decides to impose a variance sentence, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* (noting that a "major departure should be supported by a more significant justification than a minor one.").

Applying these standards, the Fourth Circuit has concluded that a sentencing court must: "(1) properly calculate the Guideline range; (2) allow the parties to argue for the sentence they deem appropriate and determine whether the § 3553(a) factors support the sentences requested by the parties; and (3) explain its reasons for selecting a sentence." *United States v. Simmons*, 269 Fed. Appx. 272 at *1 (4th Cir. 2008) (*citing United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007)).

## III. DEFENDANT'S OBJECTIONS

Defendant argues that the earliest date of relevant conduct on the PSR is incorrect. The government is reexamining the image that the Probation Officer used to calculate the earliest date of relevant conduct to determine if the 2002 "create" date is an anomaly. The government does not have a definitive answer at the time of this filing and will supplement its position prior to sentencing.

## IV. FACTORS UNDER 18 U.S.C. § 3553(a)

Under 18 U.S.C. § 3553(a), when imposing a sentence, the Court should consider (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need for the sentence imposed to promote the goals of sentencing, (4) the kinds of sentences available, (5) the sentencing guideline range, (6) any pertinent policy statement issued by the Sentencing Commission, (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (8) the need to provide restitution to any victims of the offense.

### A.   Nature and Circumstances of the Offense and Defendant's History and Characteristics

The nature of the charge to which the defendant has pleaded guilty, possession of images of minors engaging in sexually explicit conduct, in and of itself calls for a substantial term of imprisonment. This is not a victimless crime. The victims are and continue to be the children depicted in the images. The "use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child" used in the production of the pornographic material. *Osborne v. Ohio*, 495 U.S. 103, 109 (1990). Furthermore, collecting

child pornography images feeds a market that preys upon other children by creating a demand for more of the images. *Osborne v. Ohio*, 495 U.S. 103, 109-11 (1990).

The defendant had a staggering amount of child pornography in his possession. The forensic examination of his electronic media revealed nearly 20,000 images of child pornography, including images that depicted bondage, bestiality, and sadomasochistic activity. Additionally, the defendant has over 1,400 videos of child pornography. These images and videos include a depiction of a child wearing a collar and bound with rope, a prepubescent boy being anally sodomized by an adult, and nude images of children as young as toddler age. The defendant admitted that he had been seeking out child pornography for years, and that he used a wide variety of internet-based means to find it. These means included direct communications with other "like-minded" individuals in order to further defendant's collection as well as feed other's demands for more images.

Seeking out and maintaining a membership in a child pornography-related community is alarming. In addition, using multiple means of collecting and trading child pornography is another factor that should be accounted for in the Court's assessment of this defendant. This, along with the large numbers of images and graphic violence depicted in defendant's collection, way in favor of a significant sentence of imprisonment.

### B.     Defendant's Criminal History

While the defendant has a criminal history score of zero, he does not have a spotless record. His criminal history includes driving under the influence of alcohol, making telephone threats, and being drunk in public. Further, for most defendants involved with child pornography, it is not unusual that they have little to no criminal history. Thus, this is not a factor that takes the defendant out of the heartland of child pornography offenders.

### C. Need to Deter Future Criminal Conduct and to Protect the Public

The defendant's sentence needs to accomplish the twin goals of deterring the defendant from engaging in future criminal conduct and to protect the public. The government avers that, if given the opportunity, the likelihood that the defendant will return to this predatory behavior in the future is strong due to his obvious sexual attraction to minors. However, a significant sentence of imprisonment may help defendant realize that 1) he does have a serious problem and 2) he needs to learn to control his behavior.

### D. Need to Provide Treatment to Defendant

Due to the nature of the defendant's crimes, the defendant should be ordered to participate in a sex offender treatment program while incarcerated.

### E. Need to Avoid Unwarranted Sentencing Disparities

The defendant's crimes, history and characteristics, along with his actions related to the crimes of conviction, all support a significant sentence of imprisonment. As such, the need to avoid unwarranted sentence disparities clearly weighs in favor of a within Guidelines sentence. 18 U.S.C. § 3553(a)(6).

## V. CONCLUSION

The government agrees that the Guidelines calculations in the Presentence Report are correct. For the reasons stated above, the government asks the Court to impose a significant sentence of imprisonment and supervised release.

DANA J. BOENTE
UNITED STATES ATTORNEY

By: /s/ Elizabeth M. Yusi
Elizabeth M. Yusi
Assistant United States Attorney

Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-6689
E-Mail Address: elizabeth.yusi@usdoj.gov


/s/ Leslie Williams Fisher
Leslie Williams Fisher
Special Assistant United States Attorney
Eastern District of Virginia
101 W. Main St., Suite 8000
Norfolk, Virginia 23510
Phone: (202) 616-2557
Fax: (202) 514-1793
E-mail: Leslie.Fisher2@usdoj.gov
Virginia Bar No. 77470

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of April, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Rodolfo Cejas II
Counsel for Defendant
150 Boush Street, Suite 403

I FURTHER CERTIFY that on this 12th day of April, 2016, I caused a true and correct copy of the foregoing Position of the Government with Respect to Sentencing Factors to be e-mailed to the following:

Jason D. Cole
Senior U.S. Probation Officer
600 Granby Street, Suite 200
Norfolk, Virginia 23510

/s/ Elizabeth M. Yusi
Elizabeth M. Yusi
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Phone: 757-441-6331
Fax: 757-441-6689
E-mail: elizabeth.yusi@usdoj.gov